UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH E. HECHAVARRIA,

    Petitioner,

  v.                                                               15-CV-1058
                                                                      Decision and Order
JEFFERSON B. SESSIONS III, Attorney
General of the United States;

MICHAEL PHILIPS, Field Director for
Department of Homeland Security
Immigration and Customs Enforcement
Detention and Removal; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility

    Respondents.

---

Petitioner Joseph E. Hechavarria is a "criminal alien" who is subject to mandatory detention while he awaits judicial review of his final order of removal, pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018); *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018). He has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, under this provision of the INA for over five years.

Before this Court is Hechavarria's petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking release from detention. This Court grants his petition. For the following reasons, this Court concludes that, given its length, Hechavarria's ongoing

detention violates his right to due process.  The government may not continue to detain Hechavarria unless a neutral decision-maker determines by clear and convincing evidence that his detention necessarily supports a legitimate and compelling regulatory purpose.

## BACKGROUND

### IMMIGRATION AND CRIMINAL HISTORY

Hechavarria, a Jamaican citizen, received conditional permanent resident ("CPR") status in 1987 after overstaying a visitor visa and marrying a United States citizen.  Docket Item 6-2 at 2.  Two years later, however, his status was terminated pursuant to 8 U.S.C. § 1186a(c).  *Id.*  In February 2010, Hechavarria was charged with being removable from the United States under 8 U.S.C. § 1227(a)(1)(D)(i), *id.*, which renders deportable individuals with terminated CPR status.  Hechavarria was not detained; instead, he was released to the DHS Alternatives to Detention program.  *Id.*  On December 1, 2010, United States Citizen and Immigration Services granted a Form I-130[1] that his son filed on his behalf.  *Id.* at 3.

On December 13, 2010, state authorities issued a criminal arrest warrant for Hechavarria in connection with, among other things, an alleged rape and assault that occurred earlier that month.  *Id.* at 35.  After learning of Hechavarria's arrest warrant, DHS agents detained him in New York City on December 22, 2010, and transported him

---

[1] A Form I-130 is a "Petition for Alien Relative" and may be used by "a citizen or lawful permanent resident of the United States who needs to establish their [sic] relationship to certain alien relatives to wish to immigrate to the United States." https://www.uscis.gov/i-130

to Cheektowaga, New York, to face the charges. *Id.* at 3, 36. In 2011, he was convicted of assault in the second degree and sentenced to three years of incarceration and two years of post-release supervision. *Id.* at 3.

### DEPORTATION PROCEEDINGS AND APPEALS

While Hechavarria was incarcerated on the state conviction, ICE added a charge of removability based on his conviction for an "aggregated felony" under INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). *Id.* Under the statute, an "aggregated felony" includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 9 U.S.C. § 1101(a)(43)(F). On July 11, 2013, Hechavarria was released from criminal custody and immediately transferred to DHS custody at the BFDF. Docket Item 6-2 at 3. In June 2015, he was ordered removed to Jamaica. *Id.*

Hechavarria has a longstanding history of renal disease. Docket Item 1-1 at 38. He received a kidney transplant in 2008, but he has since faced life-threatening transplant rejection and other medical issues. *Id.* His medical conditions must be closely monitored, and he requires frequent life-sustaining medical services. *Id.* at 38-39. In April 2014, the Consulate General of Jamaica informed Hechavarria that "there will be challenges in accessing the appropriate medical care, as the services available are minimal and very costly in Jamaica." *Id.* at 43. Indeed, the services Hechavarria requires "are minimally available even for those certain individuals who are able to pay for this very expensive care, and would unlikely be available for [him]" in Jamaica." *Id.* at 39.

Hechavarria filed two appeals from his order of removal and a motion to reopen proceedings. Docket Item 6-1 at 7-8. In September 2015, the last of those appeals was dismissed by the Board of Immigration Appeals ("BIA"). *Id.* at 8. A short time later, Hechavarria filed a pro se petition for review of the BIA order dismissing his appeal, as well as for a stay of removal, in the United States Court of Appeals for the Second Circuit. *Id.* at 9. In December 2016, a Second Circuit panel granted a stay of removal because it found that Hechavarria has "an arguable claim that the BIA erred in adhering to the aggravated felony crime of violence determination without assessing whether *Johnson v. United States*, 135 S. Ct. 2551 (2015), constitutes intervening precedent." Order Staying Appeal, *Hechavarria v. Lynch*, No. 15-3331 (2d Cir. 2016), ECF No. 55. In April 2018, the Supreme Court issued an opinion concluding that the definition of "crime of violence" incorporated into the INA's definition of aggravated felony violated due process because it was impermissibly vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1215 (2018). In August 2018, a Second Circuit panel requested briefing on the impact of *Dimaya* on Hechavarria's case. Order, *Hechavarria v. Sessions*, Docket No. 15-3331 (2018), ECF 79.

**PETITION FOR WRIT OF HABEAS CORPUS**

Hechavarria began this proceeding by filing a pro se petition for a writ of habeas corpus in December 2015. Docket Item 1. In April 2016, United States District Judge John T. Curtin denied the petition, premised on his determination that the government was detaining Hechavarria under 8 U.S.C. § 1231. Docket Item 16. Judge Curtin reasoned that Hechavarria's ninety-day removal period under § 1231 commenced on

4

September 30, 2015, because that was the day the BIA dismissed his appeal of the Immigration Judge's decision. *Id.* at 7.

Hechavarria timely appealed Judge Curtin's denial of his petition. In May 2018, a Second Circuit panel determined that because of the ongoing appeal of his removal order, Hechavarria is being detained under 8 U.S.C. § 1226(c), the statute that governs the detention of criminal aliens before a removal order is issued, and not § 1231. *Hechavarria v. Sessions*, 891 F.3d 49, 56-57 (2018).

Until earlier this year, the Second Circuit had read an implicit temporal limitation into § 1226(c), requiring a bail hearing before an immigration judge—at which the government must establish by clear and convincing evidence that the immigrant poses a risk of flight or danger to the community—within six months of detention. *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018). But in *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018), the Supreme Court rejected that interpretation of the statute. In *Jennings*, the Court determined that § 1226(c) mandates detention of any alien falling within its scope and that under the statute detention may end prior to the conclusion of removal proceedings only if the alien is released for witness protection purposes. In reaching that conclusion, the Court left open the constitutional questions raised by prolonged mandatory detention under § 1226(c). *Id.* at 851.

"In light of the substantial uncertainty surrounding the detention provisions in Section 1226(c) given the new legal landscape, [the Second Circuit panel] remand[ed] th[e instant] case to [this] [C]ourt for consideration in the first instance of the appropriate

5

remedy for Hechavarria in light of the Supreme Court's decision in *Jennings*." *Hechavarria*, 891 F.3d at 58.

## DISCUSSION

The federal government has detained Hechavarria since July 11, 2013—more than five years and three months—pending a final determination regarding his removal. What is more, he has not had an individualized determination as to whether he presents a flight risk or a danger to society. He contends that his ongoing detention violates the Fifth Amendment.

### I. STATUTORY FRAMEWORK AND HISTORY: 8 U.S.C. § 1226

"Hechavarria's detention is . . . governed by 8 U.S.C. § 1226(c) and the case law surrounding that section of the INA." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).

When the government seeks removal of an alien already present in the United States, 8 U.S.C. § "1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."[2] *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). "Section 1226(a) also permits the Attorney General to release those aliens on bond, 'except as provided in subsection (c) of this section.'" *Id.* (quoting 8 U.S.C. § 1226(a)).[3] "Section

---

[2] Although the statute refers to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security.

[3] 8 U.S.C. § 1226(a) provides:

1226(c) in turn states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities."[4] *Id.* (quoting 8 U.S.C. § 1226(c)(1)). "Section 1226(c) then goes on to

---

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole, but

(3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other approprirate work permit) unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

[4] 8 U.S.C. § 1226(a) grants authority to conduct bail hearings for aliens pending removal decisions "[e]xcept as provided in subsection (c)." 8 U.S.C. § 1226(c), captioned "Detention of criminal aliens," provides:

(1) Custody

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

7

specify that the Attorney General 'may release' one of those aliens '*only if* the attorney general decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Id.* (quoting 8 U.S.C. § 1226(c)(2)) (emphasis in original).

Section 1226(c) "does not on its face limit the length of detention it authorizes." *Id.* "[A]liens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.* "And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a [final] decision on whether the alien is to be removed from the United States.'" *Id.* (quoting 8 U.S.C. § 1226) (emphasis in original); *see Hechavarria*, 891 F.3d at 57 (Section 1226(c) governs detention during a stay of removal pending a court of appeals' resolution of petition for review).

Congress did not always mandate detention of all "criminal aliens" subject to what is now § 1226(c). The policy mandating detention of criminal aliens during their

---

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

removal proceedings was adopted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 303(b), 110 Stat. 3009-586 (Sept. 30, 1996), "against a backdrop of wholesale failure by the [Immigration and Naturalization Service ("INS")[5]] to deal with increasing rates of criminal activity by aliens." *Demore v. Kim*, 538 U.S. 510, 518 (2003).  In the early 1990s, "[c]riminal aliens were the fastest growing segment of the federal prison population . . . and they formed a rapidly rising share of the state prison populations."  *Id.*  Congressional "investigations showed . . . that the INS could not even *identify* most deportable aliens, much less locate them and remove them from the country."  *Id.* (emphasis in original). "Congress . . . had before it evidence that one of the major causes of the INS' failure to remove deportable aliens was the agency's failure to detain those aliens during their deportation proceedings."  *Id.* at 519.  Congress found that "[o]nce released, more than 20% of deportable criminal aliens failed to appear for their removal hearings."  *Id.*  So the statute reflects a congressional determination that "detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from the country."  *Id.* at 521.

## II. CONSTITUTIONAL FRAMEWORK AND ANALYSIS

Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from

---

[5] The Immigration and Naturalization Service was an agency of the United States Department of Justice from 1940 to 2003.  It ceased to exist under that name in March 2003 when most of its functions were transferred to new entities within the newly created Department of Homeland Security under the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

9

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (and cases cited therein) (emphasis in original). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Although Congress's broad immigration power justifies mandatory detention without the opportunity to be heard under § 1226(c), *see Demore*, 538 U.S. at 531, there are constitutional limitations on how long that detention can last. Indeed, in finding § 1226(c) constitutional on its face, the Supreme Court noted that the Due Process Clause is not offended by mandatory detention without a hearing for the *"brief period*

10

*necessary* for . . . removal proceedings." *Id.* at 513. (emphasis added). [6] The Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas [v. Davis*, 533 U.S. 678 (2001)]." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

### A. HECHAVARRIA'S § 1226(c) PROLONGED DETENTION WITHOUT A HEARING

"[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty . . . an individualized determination as to . . . risk of flight and dangerousness [could be required] if the continued detention bec[omes] unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). Hechavarria contends that the Due Process Clause mandates a bright-line rule prohibiting § 1226(c) detention for more than six months without a bond hearing.[7] Docket Item 27 at 20-24. The government concedes that due

---

[6] Aliens who are held under § 1226(c), such as the petititoner, have been convicted of a qualifying felony. *See* 8 U.S.C. § 1226(c). Thus, the due process accompanying a § 1226(c) detainee's criminal conviction ensures that a detainee's brief detention, "is not arbitrary" or "erroneously imposed." *Cf. Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 244-245 (1988) (finding of probable cause by independent grand jury is sufficient process to support bank regulator's decision to suspend bank official from working in bank for 90-day period without separate post-suspension ruling).

[7] Hechavarria's argument that due process requires a six-month bright-line rule relies on *Lora v. Shannahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018). In *Lora*, to avoid constitutional concerns, the Second Circuit interpreted § 1226(c) to include an implicit bail hearing requirement within six months of detention.

11

process prohibits indefinite detention without a hearing under § 1226(c), but it contends that the reasonableness of detention should be assessed on a case-by-case basis, focused on whether detention continues to serve its purported immigration purpose of preventing flight and protecting the public by preventing the commission of further crimes. Docket item 29 at 2.

"'Due process is flexible,' . . . and it 'calls for such procedural protections as the particular situation demands.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In the words of Justice Frankfurter, due process

> is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162-163 (1951) (Frankfurter, J., concurring). In light of these principles and the Supreme Court's decision in *Jennings*, this Court has serious doubt that the clause imposes a six-month

---

In *Jennings*, the Supreme Court found that Lora incorrectly interpreted that statute. *Jennings*, 138 S. Ct. at 846-847.

*Lora*'s reasoning suggests (1) that the length of detention still is a key factor in determining whether § 1226(c) detention without an individualized hearing violates due process and (2) that detention lasting for six months or less is not likely to raise due process concerns. In that light, Hechavarria argues that what is left of *Lora* supports a bright-line six-month rule and that there are policy benefits to such a rule, including the fact that it is predictable, fair, and easily administered. Docket Item 27 at 22. This Court does not necessarily disagree with those arguments as a matter of policy, but it is not persuaded that those policy arguments support the conclusion that a six-month bright-line rule is required by the Due Process Clause, especially given more recent case law.

bright-line rule for § 1226(c) detention.[8] But regardless of whether the petitioner's bright-line approach or the government's case-by-case analysis applies, the five-year detention here is simply too long to survive due process scrutiny.[9]

*Demore*'s assumptions regarding the typical § 1226(c) detention timeframes are blown away by the length of time that the government has detained Hechavarria without an opportunity to be heard. *See* 538 U.S. at 529. Far from the four-month average period contemplated in *Demore* for individuals who have appealed their removal decisions, Hechavarria has been detained for more than five years and counting—more than fifteen times the average period contemplated in *Demore*. *See id*.[10] Indeed, the

---

[8] Many district courts have concluded that the Due Process Clause requires a case-by-case determination of whether a § 1226(c) detention requires an individualized hearing. *See, e.g., Cabral v. Decker*, 2018 WL 4521199, at *4 (S.D.N.Y. Sept. 21, 2018) (and cases cited therein).

[9] The Second Circuit has rejected a substantive due process challenge to the length of a six-year detention by an immigrant detainee who had been denied admission to the United States. *Sanusi v. I.N.S.*, 100 Fed.Appx. 49, 51 (2d Cir. 2004) (citing *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991)). But questions about "the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal," *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987), differ from a detainee's procedural due process right to an individualized hearing. *See Doherty*, 943 F.2d at 211 (length of detention not unreasonable where "consistent administrative and judicial findings that [detainee] presents an exceptionally poor bail risk support the continuing decision to detain him").

[10] Additionally, is unclear whether *Demore* even contemplated cases, such as this one, where a court of appeals has stayed removal pending judicial review of a BIA decision. In *Demore*, the Court statistically analyzed cases where aliens are detained pursuant to § 1226(c), dividing them into cases where the alien appealed the decision to the BIA (15% of cases), completed in four months on average, and those that are not appealed to the BIA (85% of cases), completed in 47 days on average. *Demore v. Kim*, 538 U.S. 510, 529 (2003). Depending on whether the Court included appeals to the circuit courts when it discussed the cases where an alien appeals the decision of an Immigration Judge to the BIA, this case may be outside the one hundred percent of cases analyzed in *Demore*.

length of Hechavarria's detention without a hearing is substantially longer than the prolonged § 1226(c) detention in several recent cases where district courts have found that due process demands a bond hearing. *See Cabral v. Decker*, 2018 WL 4521199, at *5 (S.D.N.Y. Sept. 21, 2018) (over seven months – nine months at next court date); *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (over fourteen months); *Thomas C. A. v. Green*, 2018 WL 4110941, at *5 (D.N.J. Aug. 29, 2018) (approximately fifteen months); *Vallejo v. Decker*, 2018 WL 3738947, at *4 (S.D.N.Y. August 7, 2018) (length of time since petitioner's last *Lora* hearing—"almost seventeen months—is, to put it mildly, significant"); *K.A. v. Green*, 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (approximately nineteen months); *Hernandez v. Decker*, 2018 WL 3579108 at *5 (S.D.N.Y. July 25, 2018), (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018) (over eight months). *See also Chavez-Alverez v. Warden York Cty. Prison*, 783 F.3d 469, 477 (3d Cir. 2015) (nine-month § 1226(c) detention without bond hearing "strain[s] any common-sense definition of a limited or brief civil detention"), *abrogated in part and on other grounds by Jennings*, 138 S. Ct. at 847; *Muse, supra*, at *4 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing").

The government contends that § 1226(c) detention without a hearing survives due process scrutiny whenever a criminal alien chooses to request a stay of removal and thus litigate through ongoing appellate proceedings. Docket Item 29 at 21. And a close reading of *Demore* suggests that the government may reasonably detain an immigrant under § 1226(c) without a hearing for a somewhat longer period if the immigrant chooses to appeal. *See Demore*, 538 U.S. at 529 (differentiating between

14

average lengths of detention among detainees who have appealed decisions to the BIA and those who have not); *see also Manley v. Delmonte*, 2018 WL 2155890, at *2 (W.D.N.Y May 10, 2018) (right of appeal "may [not necessarily] be exercised without consequence"). Even so, as this Court has noted above, the four-month average period considered in *Demore* for those detainees who appealed their decisions to the BIA is far shorter than the period of time that Hechavarria has been detained.

Furthermore, the government does not contend that Hechavarria has "filed frivolous appeals in order to delay [his] deportation," *Demore*, 538 U.S. at 530 n.14, or has otherwise "substantially prolonged his stay by abusing the processes provided to him," *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).[11] On the contrary, both the record and a review of Hechavarria's merits proceedings suggest that the delay in his deportation proceedings results largely from recent Supreme Court decisions that increase his appeal's likelihood of success and the time that it took the Court to decide those cases.[12] To the extent Hechavarria has taken advantage of the opportunities for administrative and judicial review of legitimate claims in his underlying proceedings, the appeals procedures provided by Congress are to blame for the length of his appeals.

---

[11] At oral argument, the government suggested that Hechavarria has the power to free himself from detention simply by agreeing to be deported to his native Jamaica. But given Jamaica's warning that it may not have medical services capable of keeping Hechavarria alive, Docket Item 1-1 at 43, that suggestion is disingenuous, if not mean-spirited.

[12] The stay issued by the Second Circuit demonstrates that Hechavarria's appeal is far from frivolous and may well have merit. Order Staying Appeal, *Hechavarria v. Lynch*, No. 15-3331 (2d Cir. 2016), ECF No. 55.

## B. Nature of Procedural Requirements Due to Hechavarria

Finally, this Court rejects the government's contention that Hechavarria's *Joseph* hearing and the other minimal process he has been provided satisfies his procedural due process rights.

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Hechavarria must be released unless the government demonstrates by clear and convincing evidence that his continued detention is necessary to serve a compelling regulatory purpose.

Hechavarria's private interests in his freedom and his life deserve great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Hechavarria has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The government contends that in immigration detention cases such as this one, this interest is less weighty than other instances of imprisonment because the detainee "may voluntarily end removal proceedings and the immigration detention incident to them." Docket Item 29 at 27. But, as noted above, the record supports serious and legitimate concerns that Hechavarria's life-sustaining medical services are unavailable in Jamaica. Docket Item 1-1 at 38-39, 43; note 11, *supra*. Therefore, at least in Hechavarria's case, the decision that the government would force Hechavarria to make—whether to voluntarily end removal proceedings—is not one simply between

16

detention in the United States and liberty somewhere else, but potentially between detention here and serious illness or death there. The record thus implicates Hechavarria's interest in his own life, another interest at the heart of the Due Process Clause. *See Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 281 (1990) ("It cannot be disputed that the Due Process Clause protects an interest in life").

The government asserts that its interest also is strong. It contends that it has a regulatory interest in Hechavarria's detention pending removal based on his serious criminal history and risk of flight. Docket Item 29 at 19. This Court agrees that both of these interests may well be "legitimate and compelling." *United States v. Salerno*, 481 U.S. 739, 752 (1987). But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that Hechavarria must be detained because he is dangerous, *see, e.g.,* Docket Item 29 at 2, 19-20, 26, simply begs the question and suggests exactly why a hearing is necessary.

Moreover, given that the statute precludes any pre- or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a significant risk of erroneously depriving Hechavarria of life and liberty interests. The proceedings that the government argues support Hechavarria's due process, such as a *Joseph* hearing, have no relation to the government's purported regulatory interests in detaining him. At a *Joseph* hearing, a "detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore*, 538 U.S. at 514 n.3. In other words, at a *Joseph* hearing, the § 1226(c) detainee has the burden of

17

proving that he should not be a § 1226(c) detainee, and the government's regulatory purposes in detention itself—for example risk of flight or dangerousness—are irrelevant. Given the length of Hechavarria's detention, that is simply not good enough.

In considering and balancing the three factors noted above, this Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose. In those cases, due process requires the government to demonstrate by clear and convincing evidence that detention serves a compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-433. That standard applies equally here. *See Darko v. Sessions*, 2018 WL 5095671, at *6 (S.D.N.Y Oct. 19, 2018); ("government must bear the [bond hearing] burden by clear and convincing evidence"); *Linares v. Decker*, 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018) ("as a matter of due process, the Government must prove by clear-and-convincing evidence that an alien poses a risk of flight or a danger to the community before he or she may be detained under Section 1226(a)"); *Hernandez v. Decker*, 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018) ("due process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard"); *Sajous v. Decker*, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) ("the Government must justify [§ 1226(c) detainee's] continued detention by proving by clear and convincing evidence that he is a flight risk or danger to the community"); *see also Manley v. Delmonte*, 2018 WL 2155890, at *2 (W.D.N.Y May 10, 2018) (deciding case without reaching due process question when Immigration Judge "applied the clear-and-convincing-evidence

18

standard"). *Cf. Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) ("clear and convincing evidence standard of proof applies in [§ 1226(a)] bond hearings").

"When the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. But the clear and convincing standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money,'" which is the case here. *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington*, 441 U.S. at 424). Thus, the clear and convincing evidence standard "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769; *see also Woodby v. Immigration and Naturalization Serv.*, 385 U.S. 276, 285 (1966) ("clear, unequivocal, and convincing evidence" standard applies in deportation proceedings).

Because Hechavarria's § 1226(c) detention has been unreasonably prolonged, and because § 1226(c) does not require the government to demonstrate by clear and convincing evidence that his detention necessarily serves a compelling regulatory purpose, the statute is unconstitutional as applied to him. His continued detention violates the Due Process Clause unless the government demonstrates by clear and

convincing evidence before a neutral decisionmaker that it is necessary to serve[13] a compelling regulatory purpose.[14]

## CONCLUSION

For the reasons stated above, Hechavarria's petition is GRANTED. **Within fourteen calendar days of the date of this Decision and Order**, the government must release Hechavarria from detention unless a neutral decision-maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Hechavarria's continued detention is necessary to serve a compelling regulatory purpose.[15]

SO ORDERED.

Dated: November 2, 2018
Buffalo, New York

      *s/ Lawrence J. Vilardo*
      LAWRENCE J. VILARDO
      UNITED STATES DISTRICT JUDGE

---

[13] Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention, such as release on bond in an amount that the petitioner can reasonably afford, would also address those purposes.

[14] Whether § 1226(a) (or another statute) provides the authority to conduct the bond hearing that due process requires is a matter of statutory interpretation that the Immigration Judge should have the first opportunity to address.

[15] Detention under § 1226(c) is designed to serve the government's regulatory purposes of minimizing risks of flight and danger to the community. *Demore*, 538 U.S. at 518-21. These are compelling regulatory purposes. *Salerno*, 481 U.S. at 752.