UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH E. HECHAVARRIA,

        Petitioner,

    v.

MATTHEW G. WHITAKER,
Acting Attorney General of the United
States;

THOMAS FEELEY, Field Director for
Department of Homeland Security
Immigration and Customs Enforcement
Detention and Removal; and

JEFFREY SEARLS, Facility Director,
Buffalo Federal Detention Facility,

        Respondents.

_____

15-CV-1058
DECISION AND ORDER

The petitioner, Joseph E. Hechavarria, has been detained by the United States

Department of Homeland Security, Immigration and Customs Enforcement ("DHS")

since July 11, 2013—for five-and-a-half years—pending a final determination regarding

his removal.  On November 2, 2018, this Court ordered the respondents to "release

Hechavarria from detention unless a neutral [decisionmaker] conducts an individualized

hearing to determine whether his continued detention is justified."  Docket Item 38 at 20.

More specifically, this Court found that given the extent of Hechavarria's unreasonably

prolonged detention, due process required the government to bear "the burden of

demonstrating by clear and convincing evidence that [his] continued detention is

necessary to serve a compelling regulatory purpose."  *Id.*  Furthermore, this Court found

that the determination of whether detention was "necessary to serve a compelling regulatory purpose" necessarily required the decisionmaker to consider whether "a less restrictive alternative to detention" would suffice.  *Id.* at 20 n. 13.

Now before the Court is Hechavarria's motion, Docket Item 43, to enforce this Court's order and judgment, Docket Items 38, 40.  Because the respondents failed to comply with this Court's November 2, 2018 order, the respondents are ordered to release Hechavarria under conditions of supervision.

## BACKGROUND

The factual and procedural background leading to this Court's order of November 2, 2018, is generally set forth in that order.  *See* Docket Item 38 at 2-6, *Hechavarria v. Sessions*, 2018 WL 5776421, at *1-*3 (W.D.N.Y. Nov. 2, 2018); *see also Hechavarria v. Sessions*, 891 F.3d 49, 51-53 (2d Cir. 2018); Docket Item 9 at 2-6.  On November 16, 2018, Hechavarria filed a status report, which stated that a bond hearing had been held in Immigration Court at Batavia, New York on November 6, 2018.  Docket Item 41 at 1. The Immigration Judge ("IJ"), Philip J. Montante, Jr., issued a written decision on November 14, 2018, denying Hechavarria's request for bond.  *Id.*

## I.  THE HEARING

On November 6, 2018, IJ Montante conducted Hechavarria's bond hearing. Docket Item 43-2 at 10.  Before the evidentiary hearing began, Hechavarria's counsel raised an issue regarding the statutory authority of the IJ to hold the bond hearing in the first place.  *Id.* at 11.  IJ Montante took that issue under advisement, explaining "that will be thoroughly examined in the final [written] analysis."  *Id.*

IJ Montante allowed the government to proceed first because the government had the burden of proof. *Id.* at 10. The government noted that Hechavarria "pled guilty to assaulting another person by cutting that person, his alleged girlfriend, with a knife." *Id.* at 15. The government said that Hechavarria "was accused by his on-again off-again girlfriend of having sexual intercourse with her without her consent, in addition to cutting her on the neck with a steak knife." *Id.* at 15-16. The government argued that "this shows a history of engaging in very dangerous behavior." *Id.* at 16.

The government also addressed news articles reporting that Hechavarria once went to New York City after he became aware that there were allegations pending against him in Cheektowaga, New York. *Id.* This was "something for this court to consider, if it were to consider flight." *Id.* The government argued that "as long as the government has established to this court and this court's mind that this respondent presents a clear and convincing evidence of danger or such a risk of flight . . . no bond is warranted, then [the government] ha[s] met the requirements of the district court's ruling." *Id.* at 17.

Counsel for Hechavarria responded that the government had not met its burden. He noted that

> the government has to show by clear and convincing evidence that detention is necessary. Not simply that it's, would be effective. But that detention is necessary to serve a compelling governmental interest.

*Id.* at 18. Counsel for Hechavarria then offered the IJ a less restrictive alternative to detention: "electronic monitoring." *Id.*

Counsel for Hechavarria presented evidence—that is, a request for permission to travel to New York City, which had been granted—to show that the news article upon which the government relied did not suggest any risk of flight. *Id.* at 19 More

3

specifically, counsel argued that this "supports [their] argument that Mr. Hechavarria does not present a flight risk" because "request[ing] permission to go to New York City" before traveling there is "not the conduct[] of somebody who is seeking to abscond." *Id.* at 20.

Counsel for Hechavarria also observed that "every single piece of evidence that the government has submitted . . . does not go past 2011." *Id.* He argued that "the government needs to demonstrate . . . that nothing has changed since 2011," and he noted that "the government has submitted nothing to show that nothing has changed since 2011." *Id.* Counsel submitted risk assessments from the New York State Department of Corrections and Community Supervision finding that Hechavarria's "risk of felony violence," "arrest risk," and "abscond risk" all are low; the assessments also showed that his "prison misconduct" and "history of violence" were minimal as well. *Id.* at 21. Counsel also introduced evidence that Hechavarria participated positively in available programming while incarcerated and had a clean disciplinary record. *Id.* at 22-23.

Hechavarria's attorney also submitted evidence of Hechavarria's medical condition, arguing that because of his medical issues, Hechavarria would not and could not abscond if released. *Id.* at 23-24. He also submitted e-mails from Hechavarria's family members—including Ronald Hechavarria, the petitioner's brother, and Germaine Hechavarria, the petitioner's son—to demonstrate his family ties, and he argued that those family ties would decrease the likelihood that Hechavarria might return to abusing drugs if released. *Id.* at 24-25. Based on all that, Hechavarria's counsel expressly asked "the [IJ] to release Mr. Hechavarria on . . . stringent monitoring, electronic

monitoring, . . . and stringent conditions of supervision." *Id.* at 26.

Counsel for the government replied by arguing that "[p]ast actions are often a predictor for future actions." *Id.* He said that because Hechavarria had been in custody for years and therefore had limited opportunities to return to drug use, "we don't know how he will act when he is released." *Id.* at 26-27. "We don't know if he will return to using drugs, which, according to . . . the documents I've submitted . . . he's had drug issues since 1988." *Id* at 27. "And we don't know what he's going to do if he's released from custody." *Id.* "It's been a long time since he's been [out of] custody." *Id.* "[I]mportantly," the government argued, "what's he going to do when he is finally released? And the bottom line is, none of us know." *Id.*

Turning to the standard of proof, government counsel said that the IJ "can weigh [Hechavarria's] history to determine whether or not he will engage in [drug-related] risky, dangerous behavior." *Id.* Moreover, he argued, "in immigration court if [the IJ] feel[s] there is a potential that this respondent is a danger, then no bond is appropriate, no, no stringent monitoring is appropriate, because if you feel the need for stringent monitoring, because you fear that this respondent might engage in some sort of act, then the proper recourse is no bond then in that case." *Id.* "Because he is a danger, and if he is a danger then no bond enough is sufficient to protect the citizens of the United States and those around it." *Id.*

At the conclusion of the hearing, the IJ asked the parties whether they wished to put on testimonial evidence. *Id.* at 31. When both sides declined, the IJ specifically asked whether either side would call Hechavarria to testify. *Id.* The parties responded

in the negative; there were some additional exchanges regarding scheduling; and the hearing ended. *Id.* at 31-33.

## II.    THE IJ'S DECISION

After listing the exhibits that were introduced at the hearing, IJ Montante noted that "[t]raditionally, it is the Respondent's burden to establish eligibility for bond by proving that his 'release would not pose a danger to property or persons, and that he is likely to appear for any future proceeding,' 8 C.F.R. § 1236.1(c)(8)." Docket Item 41 at 5-7.  Here, "[h]owever, the Federal District Court placed the burden on the government to establish that the Respondent poses a risk of danger to the community." *Id.* at 7.

The IJ then relied on *Matter of Adeniji*, 22 I & N Dec. 1102, 1113 (BIA 1999), for the proposition that "[a]n alien who poses a threat of danger to the community should be held without bond." *Id.* at 8.  The IJ also cited a 1974 Fifth Circuit opinion holding that "[t]he Attorney General and his delegates have wide discretion whether to release an alien on bond pending a final decision of removal, and the alien has a heavy burden to establish that the Attorney General or his delegate has abused his discretion in denying bail." *Id.* (citing *United States Ex. Rel. Barbour v. District Dir. Of I. & N.S.*, 491 F.2d 573 (5th Cir. 1974)).

The IJ found "that the DHS . . . met its burden to prove that [Hechavarria] poses a risk of danger to the community." *Id.*  More specifically, "the Court conclude[d] that the government has met its burden to show that the continued detention of the Respondent is necessary to serve a compelling regulatory purpose of minimizing a risk of danger to the community." *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 518-21 (2003)).

The IJ found that "[t]he Respondent, as well as the public, have a due process right and a right to be protected from any danger to the community." *Id.* He "consider[ed] it far too great a risk to release the Respondent to the public given the heinous and reprehensible nature of respondent's July 13, 2011 Felony Assault in the Second Degree conviction for which he was sentenced to three years of imprisonment and two years of post-release supervision." *Id.* The IJ detailed the charges against Hechavarria as well as Hechavarria's criminal conduct, including that he "cut the victim, his romantic partner, several times with a serrated steak knife in the neck" and "engaged in nonconsensual sexual intercourse with the victim multiple times over the next several hours" while on a "crack cocaine induced blackout" and "could not recall what happened." *Id.* The IJ found that his "blackout" did not "negate[] the severity of [Hechavarria's] offense" and that his "*voluntary* use of drugs should not then later serve as an excuse for his abhorrent conduct." *Id.* (emphasis in original). The IJ also observed that Hechavarria's "drug history stretches back thirty years," citing a 1988 conviction for possession of cocaine. *Id.*

IJ Montante acknowledged the vintage of Hechavarria's criminal convictions but found that he was "left with little by way of current records and evaluations to assess if the Respondent has truly learned from his past." *Id.* The IJ dismissed most of the record regarding Hechavarria's good behavior and achievements while incarcerated because "these documents are not current as the most recent document is from three years ago" and "[t]aken together, these documents do not give the Court an adequate picture of Respondent's recent conduct and propensity for violence in the future." *Id.* at 8-9.

Finally, the IJ took issue with the fact that Hechavarria did not avail himself of "direct examination or offer himself for cross-examination, even upon the express prompting of the Court." *Id.* at 9. "This made it difficult to assess Respondent's credibility, remorse for his actions, further propensity for violence, and any further drug problems." *Id.* The IJ explained that "[b]ecause he failed to testify, the Court is forced to speculate as to how the Respondent would conduct himself if released into the community." *Id.* Thus, the IJ concluded, "[t]his leaves the Court with the hefty weight of the persuasive and credible evidence submitted by the DHS that was not adequately rebutted by the Respondent." *Id.* And so, "[b]ecause Respondent failed to sufficiently present evidence and critical testimony in contravention to the DHS's evidence, the Court finds that the DHS met its burden in proving that the Respondent poses a risk of danger to the community." *Id.*

"Based on all the foregoing factors, the [IJ] determine[d] that a denial of bond is appropriate." *Id.*

## ANALYSIS

### I. JURISDICTION

Because "[f]ederal courts may not proceed at all in any cause without" subject matter jurisdiction, *Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017), the Court first must address the government's argument that 8 U.S.C. 1226(e) deprives this Court of jurisdiction. Docket Item 47 at 15-17.

## A. A District Court's Power to Enforce a Conditional Writ of Habeas Corpus

"[O]rdering a petitioner's release is 'the very essence of habeas relief.'" *Enoh v. Sessions*, 2017 WL 2080278, at *2 (W.D.N.Y. May 15, 2017) (quoting *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 864 (7th Cir. 1995)). "'Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him.'" *Id.* (quoting *Fay v. Noia*, 372 U.S. 391, 430-31 (1963)). But "[d]istrict courts rightly favor conditional grants," which give the executive branch "the opportunity to cure [its] constitutional errors" and which appropriately recognize "comity among the co-equal [branches]." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). Of course, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 n.5 (6th Cir. 2006)). So "a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010). In other words, "this Court retained the power to grant [release] if the government failed to comply with the [November 2, 2018] order." *See Enoh*, *supra* at *2 (and cases cited therein).

## B. 8 U.S.C. § 1226(e)

Under 8 U.S.C. § 1226(e),

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

This provision "precludes an alien from 'challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Alito, J., delivering the judgment of the Court) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). "But § 1226(e) does not preclude 'challenges to the statutory framework that permits the alien's detention without bail.'" *Id.* (quoting *Demore*, 538 U.S. at 517). Furthermore, the section applies only to "discretionary judgment[s] regarding the application of [§ 1226]" and "actions" or "decisions" also under § 1226. 8 U.S.C. § 1226(e).

Like the respondents in *Jennings*, Hechavarria began this proceeding by "contesting the constitutionality of the entire statutory scheme under the Fifth Amendment" as applied to his prolonged detention. 138 S. Ct. at 841. This Court then determined that his unreasonably prolonged detention violated due process and issued a conditional writ, ordering him released unless the government cured the constitutional violation. Docket Item 38 at 20. Now, even assuming that the IJ's hearing was somehow conducted under § 1226,[1] the Court is not reviewing a "discretionary judgment" of the IJ

---

[1] Whether Hechavarria's bond hearing was held under § 1226 is open to question and may also require an interpretation that avoids serious constitutional issues. *See* note 2, *infra*. "In *Lora v. Shanahan*[, the Second Circuit] addressed the detention of aliens under 8 U.S.C. § 1226(c) and joined 'every other circuit that has considered this issue, as well as the government, in concluding that in order to avoid serious constitutional concerns, [§] 1226(c) must be read as including an implicit temporal limitation.'" *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (quoting 804 F.3d 601, 614 (2d Cir. 2015)). But in 2018, "the Supreme Court held that this interpretation of [§] 1226(c) was erroneous." *Id.* at 58 (citing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)). Indeed, the Supreme Court determined that the text of § 1226(c), under which Hechavarria is being detained, "when read most naturally, does not give detained aliens the right to periodic bond hearings during the course of their detention."

under § 1226, and it is not "set[ting] aside any action or decision by the Attorney General"

under § 1226.  Nor is this Court simply *reviewing*, as the government contends, "how the

IJ applied [the clear and convincing] burden to the facts before it and weighed the

evidence."  Docket Item 47 at 14.  Instead, the Court is determining whether the order it

issued on November 2, 2018, was followed—that is, whether Hechavarria received the

due process to which he was entitled.[2]  *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th

Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002))

---

*Jennings*, 138 S. Ct. at 836.  So if § 1226 expressly prohibits DHS from providing Hechavarria, as a criminal alien, with a bond hearing, it is difficult to understand how his due process hearing was "under" § 1226.  And even if the hearing somehow was a § 1226 hearing, the IJ's decision was not a "discretionary judgment" or an "action or decision" under § 1226.  In any event, as the Second Circuit has explained, "given the new legal landscape," there is "substantial uncertainty surrounding the detention provisions in [§] 1226(c)."  *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018).

[2] In interpreting § 1226(e), it is important to recognize that "[t]he Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."  *Boumediene v. Bush*, 553 U.S. 723, 739 (2008).  And the framers' experience with the writ "counseled the necessity for specific language in the Constitution to secure the writ and ensure its place in our legal system."  *Id.* at 740.  "Article I, § 9, cl. 2, of the Constitution provides: 'The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.'"  *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001).  That clause "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account."  *Boumediene*, 553 U.S. at 745.  And "[b]ecause of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'"  *St. Cyr*, 533 U.S. at 300 (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)).  Thus, the government's argument that § 1226(e) strips this Court of its authority to enforce the order it issued on November 2, 2018, "raise[s] serious constitutional questions."  *Id.* at 314.  The fact that § 1226(e) "does not clearly apply to actions brought pursuant to the general habeas statute," including Hechavarria's motion to enforce this Court's order conditionally granting Hechavarria's petition for a writ of habeas corpus, provides further support for this Court's conclusion that § 1226(e) does not strip this Court of jurisdiction here.  *See id.* (concluding that statutory provision titled "elimination of custody review by habeas corpus" does not eliminate custody review by habeas corpus).

("[A]lthough the Attorney General's 'discretionary judgment . . . shall not be subject to review,' claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'"); *Cepeda v. Shanahan*, 2016 WL 3144394, at *2 (S.D.N.Y Apr. 22, 2016) (determining that § 1226(e) did not deprive court of jurisdiction over claims of constitutional deficiency in an immigration bond hearing, including "that the government's evidence could not, as a matter of law, establish clearly and convincingly that [the alien] was dangerous").

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The government argues that Hechavarria did not exhaust his administrative remedies by first bringing his claims of error before the Board of Immigration Appeals ("BIA").  Docket Item 47 at 12-15.  The government does not rely on a statute requiring Hechavarria to exhaust administrative remedies, but instead argues that "exhaustion should be required in this case given the true nature of the claims in Petitioner's motion and the fact that this Court already provided petitioner with relief in [its] November 2, 2018 order."  *Id.* at 13.

First, because the respondents "have not cited any authority for exhaustion of administrative remedies before filing a motion to enforce a final judgment," *Sales v. Johnson*, 2017 WL 6855827, at *7 (N.D. Cal. Sept. 20, 2017), it is far from clear that exhaustion is required before this Court can address compliance with its order.[3]  But even

---

[3] In *Cepeda v. Shanahan*, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2017), the petitioner sought habeas relief challenging the adequacy of the bond hearing that he received, but the court determined that administrative exhaustion required the petitioner first to appeal to the BIA.  Here, in contrast, Hechavarria already has obtained habeas

assuming exhaustion applies, the exceptions to exhaustion permit consideration of Hechavarria's motion here.

"The general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)). But

> if an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies. Specifically, exhaustion of administrative remedies may not be required when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'

*Id.* at 62 (quoting *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

In *Enoh v. Sessions*, 2017 WL 2080278, at *3 (W.D.N.Y. May 15, 2017), this Court determined that exhaustion principles precluded the court from considering new constitutional claims based on a court-ordered bond hearing.[4] But this Court also determined that those principles do not preclude an inquiry into whether the government complied with a prior order issuing a conditional writ of habeas corpus. *Id.* The Court recognized that because of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent:

"'prolonged' detention without due process during lengthy and backlogged removal

---

relief and this Court is simply determining whether the respondents have complied with its order granting that relief.

[4] The petitioner in *Enoh* raised new equal protection and new process claims that had not been raised before the court in the original petition for habeas relief. *Enoh v. Sessions*, 2017 WL 2080278, at *3. (W.D.N.Y. May 15, 2017).

proceedings." *Id.* In other words, appeal to the BIA would provide "no genuine

opportunity for adequate relief" from an irreparable injury that might well occur without

immediate judicial intervention.[5] *See Beharry* 329 F.3d at 62. The same reasoning

applies here, especially because this Court required the government to provide

Hechavarria with a due process hearing within fourteen days of the order it issued on

November 2, 2018. *Cf. McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (superseded

by statute on other grounds) ("prejudice may result . . . from unreasonable or indefinite

timeframe for administrative action").

Moreover, Hechavarria's motion for enforcement of this Court's order—enforcing

the requirements of the Due Process Clause in the post-*Jennings* landscape—raises

constitutional questions. And as the government has admitted, "the BIA does not have

jurisdiction to adjudicate constitutional issues." Docket Item 47 at 14 (quoting *United

States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)); *Matter of Rodriguez-

Carrillo*, 22 I & N. Dec. 1031, 1035 (BIA 1999) ("neither the Immigration Judge nor this

Board may rule on the constitutionality of the statutes that we administer"); *see Bagues-

---

[5] Some courts have concluded that in typical circumstances "continued detention . . . is insufficient to qualify as irreparable injury justifying non-exhaustion." *Paz Nativi v. Shanahan*, 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017); *see also Giwah v. McElroy*, 1997 WL 782078, *4 (S.D.N.Y. Dec. 19, 2997) ("If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that . . . administrative remedies must be exhausted before resorting to the federal courts."). But in this case, as in *Enoh*, the unreasonably prolonged nature of Hechavarria's detention without adequate procedural protection changes the equation. *Cf. McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (superseded by statute on other grounds) ("prejudice may result . . . from unreasonable or indefinite timeframe for administrative action"); *Bowen v. City of New York*, 476 U.S. 467, 483-84 (1986) (describing the irreparable injury that many disability claimants in a class would undergo if "the exhaustion requirement" were "enforced against them" including that "persons have been hospitalized due the trauma of having disability benefits cut off").

*Valles v. I.N.S.*, 779 F.2d 483, 484 (9th Cir. 1985) (excusing requirement to exhaust administrative remedies regarding due process claim because BIA "has no jurisdiction to adjudicate constitutional issues"); *see also McCarthy*, 503 U.S. at 147-48 ("an agency . . . may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute"); *Sims v. Apfel*, 530 U.S. 103, 115 (Breyer, J., dissenting) (exception rule "applies with particular force where the resolution of the claim significantly depends upon specialized agency knowledge or practice"). So the third and fourth exhaustion exceptions—the futility of an administrative appeal and a substantial constitutional question, *see Beharry*, 329 F.3d at 62—also apply to this case.

Because the government has not raised a statutory exhaustion requirement and because *Beharry*'s administrative exhaustion exceptions apply here, this Court rejects the government's argument that Hechavarria's failure to seek review of the IJ's decision by the BIA precludes this Court from considering his motion to enforce the conditional writ.

## III.    COMPLIANCE WITH THE COURT'S CONDITIONAL WRIT OF HABEAS CORPUS

### A.    Procedural Hearing Requirements after Hechavarria's Unreasonably Prolonged Detention

Hechavarria's removal proceedings, and thus his "§1226(c) detention[,] ha[ve] been unreasonably prolonged." *Hechavarria v. Sessions*, 2018 WL 5776421, at *9 (W.D.N.Y. Nov. 2, 2018). At the time this Court ordered that Hechavarria receive a meaningful hearing, he had been detained for more than five years and three months,

*id.* at *3, and Congress's broad discretionary power over his liberty given his immigration status was approaching its nadir, *see id.* at *5. Regardless of his immigration status, Hechavarria remains a "person" within the meaning of the Due Process Clause, *see Plyer v. Doe*, 457 U.S. 202, 210 (1982), and Congress's broad power over naturalization and immigration cannot justify his ongoing detention year after year after year without adequate justification and procedural protections. And more than five years into Hechavarria's detention, a "typical" § 1226(a) bond hearing[6]—where *he* must prove "*to the satisfaction of the immigration judge*" that he "does not present a danger" before the immigration judge could even consider whether conditions of supervision might suffice to protect the public—is no longer constitutionally adequate. *See Hechavarria*, *supra* at *7-*9.

After applying the *Mathews v. Eldridge* balancing test, 424 U.S. 319, 335 (1976), this Court concluded that Hechavarria's detention could not continue without close

---

[6] IJ Montante's decision cites, and clearly was influenced by, the bond hearing procedures he typically follows. *See* Docket Item 41 at 8. Congress has authorized executive agencies to promulgate regulations to implement its broad authority to detain or not to detain aliens under § 1226(a), and those "regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (citing 8 C.F.R §§ 236.1(d)(1), 1236.1(d)(1)). In those § 1226(a) bond hearings, federal regulations provide that "the alien must demonstrate to the satisfaction of the officer that [the alien's] release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Both the placement of the burden of proof on the alien and the standard of "to the satisfaction of the officer," *id.*, may reflect Congress's broad discretionary authority—delegated to immigration agencies—to decide whether to detain or release aliens on bail, for the "*brief period necessary* for their removal proceedings," *Demore v. Kim*, 538 U.S. 538, 513 (2003) (emphasis added).

Furthermore, in those proceedings, less restrictive alternatives to detention are considered *only if* the alien first demonstrates to the IJ that the alien does not pose a danger to persons or property. *See Matter of Siniauskas*, 27 I & N. Dec. 207, 207-08 (BIA 2018); *Matter of Urena*, 25 I & N Dec. 140, 141 (BIA 2009).

scrutiny by a neutral decisionmaker. *See Hechavarria*, *supra* at *9. Specifically, the government was required to "demonstrate[] by clear and convincing evidence before a neutral decisionmaker that [detention] is necessary to serve[] a compelling regulatory purpose." *Id.* And "[w]hether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention . . . would also address those purposes." *Id.* at 9 n.13.

**B.    Hechavarria's Arguments that the Government Did Not Comply with the Court's Conditional Writ**

Hechavarria raises three arguments that he did not receive the meaningful hearing that due process required. Docket Item 43-1 at 13-23. First, Hechavarria argues that the IJ did not apply the clear and convincing evidence standard. *Id.* at 15-18. Second, he argues that the IJ required him to disprove dangerousness, shifting the burden of proof. *Id.* at 18-21. Third, he argues that the IJ did not consider less restrictive alternatives to detention. *Id.* at 21-23. Because this Court agrees with Hechavarria that the government did not comply with the Court's conditional writ for the first and third reasons he articulates, this Court addresses those arguments first.

**1.    Application of the Clear and Convincing Evidence Standard**

On November 2, 2018, this Court ordered that

> the government must release Hechavarria from detention unless a neutral [decisionmaker] conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Hechavarria's continued detention is necessary to serve a compelling regulatory purpose.

*Hechavarria*, *supra* at *9.

This Court approaches the question now posed by Hechavarria "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990). When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof. First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion. *See Nguti v. Sessions*, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017); *Enoh v. Sessions*, 2017 WL 2080278, at *8 (W.D.N.Y. May 15, 2017). Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts.

"It has been said that [the clear and convincing evidence burden of proof] requires the government to prove that a factual contention is 'highly probable.'" *Enoh*, *supra* at *9 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). The primary basis for the IJ's determination that Hechavarria poses a risk of danger to the community was Hechavarria's 2010 criminal conduct and his drug conviction from 1988. *See* Docket Item 43-2 at 142. Because "a prediction of likely dangerousness can only be premised upon past behavior," *cf. Millard v. Harris*, 406 F.2d 964, 973 (D.C. Cir. 1968), it was rational for the IJ to look closely at Hechavarria's criminal conduct before reaching his conclusion. On the other hand, "[d]ue process is not satisfied . . . by rubberstamp denials based on temporally distant offenses." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3rd Cir. 1999). "The process due even to excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and

his risk of flight." *Id.* (emphasis added); *see also Judulang v. Chertoff*, 562 F. Supp.2d 1119, 1127 (S.D. Cal. 2008) ("Where Petitioner's only relevant conviction for violence is nearly 20 years old and no evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate").

But this Court need not wade too deeply into whether a reasonable factfinder could have concluded that the government met its burden of proof on the evidence presented at Hechavarria's hearing[7] because it is clear from the IJ's written opinion that the IJ did not apply the correct standard. As noted above, the clear and convincing standard requires the evidence to demonstrate that a factual contention is "highly probable." And under no fair reading of the IJ's opinion could it be said that the IJ determined that it was "highly probable" that detention was necessary to serve the government's compelling interest in minimizing danger to the community.

In IJ Montante's words, it posed "far too great a risk to release [Hechavarria] to the public given" the nature of his 2011 conviction. Docket Item 43-2 at 142. But after considering all the evidence, the IJ explicitly found the evidence inadequate to draw *any* conclusions with *any* degree of certainty about Hechavarria's future conduct. *See id.* at 142-43. For example, the IJ expressly explained that without testimony from Hechavarria, he was "forced to speculate as to how [Hechavarria] would conduct himself if released into the community." *Id.* at 143. That may be enough to meet the

---

[7] Aspects of the IJ's decision raise concerns that it was preordained and not based on thoughtful evaluation of the evidence presented. For example, it is troubling that the IJ rejected three-year-old assessments that Hechavarria posed little risk of violence because those assessments were stale, Docket Item 41 at 9, but relied heavily on a history of violence and drug use from seven and thirty years before, *id.* at 8.

standard of proof applicable to "typical" § 1226(a) bond hearings, *see* 8 C.F.R. § 1236.1(c)(8) (requiring an alien to prove "satisfaction of the officer that [her] release would not pose a danger to property or persons"); *see also* note 6, *supra*, but it does not meet standard applicable here.[8]  If the clear and convincing standard means what it says, it cannot permit detention based on mere speculation that an alien's release might possibly pose a danger.  *See Addington v. Texas*, 441 U.S. 418, 427 (1979) ("The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.").  Even if, as the IJ says, the record included only "the hefty weight of the persuasive and credible evidence submitted by the DHS," Docket Item 43-2 at 143, that is not enough when the "hefty weight" of the evidence is sufficient only to conclude that Hechavarria might possibly pose a risk of danger.  In other words, if the IJ was "forced to speculate" about whether Hechavarria was a danger, then there was not clear and convincing evidence that Hechavarria's continued detention was necessary to serve the government's interest in minimizing danger to the community.

The government observes that the IJ "explicitly acknowledged that the 'government has the burden of demonstrating by clear and convincing evidence that Petitioner's continued detention is necessary to serve a compelling regulatory purpose." Docket Item 47 at 6 (quoting Docket Item 43-2 at 141).  And the IJ did note that this

---

[8] The IJ's analysis was similar to the arguments made by the government at the hearing.  For example, the government argued that although it "agree[d] that [Hechavarria had] been detained for quite some time . . . what's he going to do when he is finally released?  And the bottom line is, none of us know."  Docket Item 43-2 at 27. Based on that reasoning, no one would ever be released.

Court's prior order required that burden of proof.[9]  But the mere utterance of the correct standard of proof early in the IJ's decision is insufficient to demonstrate that it was applied when the rest of that decision demonstrates otherwise.  *See Enoh v. Sessions*, 2017 WL 2080278, at *6 (W.D.N.Y. May 15, 2017).

## 2. Consideration of Less Restrictive Alternatives to Detention

Whether or not the IJ applied the correct burden of proof is ultimately irrelevant, however, because there is absolutely no doubt that he failed to consider any plausible, less restrictive alternative to continued detention as required by this Court's prior order. In that order, this Court explained that "[w]hether detention is necessary to serve a compelling regulatory purpose *requires* consideration of whether a less restrictive alternative to detention . . . would also address those purposes." *Hechavarria v. Sessions*, 2018 WL 5776421, at *9 n.13 (W.D.N.Y. Nov. 2, 2018) (emphasis added). *Cf. United States v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").  Without a doubt, that did not happen here.

At the hearing, counsel for Hechavarria offered a plausible, less restrictive alternative to detention: He asked the IJ to "release Mr. Hechavarria on . . . stringent monitoring, electronic monitoring, . . . and stringent conditions of supervision."  Docket Item 43-2 at 26.  But the IJ did not consider Hechavarria's proffered alternative—or any

---

[9] The IJ's reference to the standard was simply part of a long block quote repeating this Court's order.  Docket Item 43-2 at 141 (quoting *Hechavarria v. Sessions*, 2018 WL 5776421, at *20).

alternative, for that matter.  Instead, the IJ simply decided that "[b]ecause [Hechavarria] failed to sufficiently present evidence and critical testimony in contravention of DHS's evidence, the Court finds that the DHS met its burden of proving that [he] poses a risk of danger to the community."  Docket Item 43-2 at 143.  The IJ never explained why the government's evidence made it highly probable that neither "electronic monitoring," nor "stringent monitoring," nor "stringent conditions of supervision" would effectively serve the government's interest.  In fact, the IJ said not one word about any alternative to detention.

What is more, the government's brief to this Court argues not that this was an oversight by the IJ, but rather that "[a]s a matter of law, Immigration Judges should only set a bond or consider alternative conditions of supervision if an alien has first established that he is not a danger to persons or property."  Docket Item 47 at 20 (quoting *Matter of Urena*, 25 I & N Dec. 140, 141 (BIA 2009)).  The government argued that "alternatives are only considered when someone is deemed not to be a danger to the community."  *Id.*  That argument seems to be based on the "typical" § 1226(a) bond hearing, where the alien has the burden of proving that he is not a danger and the IJ considers alternatives to detention only when that burden has been met.  But the hearing here was not one of those hearings; it was a due process hearing where the government bore the burden of proof and where the IJ was required to consider alternatives before resorting to detention.  And the IJ never considered such alternatives.  Indeed, the government admits as much.

At the very least, the IJ was required to consider possible alternatives to detention, including the plausible alternative offered by Hechavarria at the hearing.  And

at the very least, the IJ was required to determine whether the government's evidence demonstrated that any and all proffered alternatives to detention would not protect the public. The IJ did not do that. And Hechavarria therefore was not given the hearing to which he was entitled.

### 3.    Party Bearing the Burden of Proof at Hechavarria's Bond Hearing

Finally, Hechavarria argues that the government did not comply with this Court's order because the IJ shifted the burden of proof to Hechavarria, requiring him to disprove his dangerousness. Docket Item 43-1 at 18-21. That argument has some appeal, especially because the IJ explained that he reached his decision "[b]ecause [Hechavarria] failed to testify." Docket Item 43-2 at 143. At the same time, however, this Court recognizes that when one party bears the burden of proof, testimony by the other party may rebut the showing made by the party bearing the burden. In explaining that Hechavarria could have, but did not, testify, the IJ simply may have been referring to Hechavarria's opportunity to rebut the government's case against him—an opportunity that Hechavarria did not take advantage of.[10] In any event, this Court need not determine whether the IJ improperly shifted the burden because there is no doubt that the IJ failed to conduct a hearing in accordance with this Court's prior order for the other reasons noted above.

---

[10] Other hearing procedures suggest that the IJ properly placed the burden of proof on the government. For example, the government put on its case first. And the IJ explicitly concluded that "DHS met its burden in proving that [Hechavarria] poses a risk of danger to community." Docket Item 43-2 at 143.

## IV.    RELIEF

This Court recognizes that it should consider whether the government has established "that there is a risk that [Hechavarria] will pose a danger to the public if released, [and] take that factor into consideration" in deciding whether to release him as the habeas remedy.  *See Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).  This Court has done just that.

Like the government and IJ Montante, this Court recognizes that no one can predict whether Hechavarria will resort to drug abuse or engage in violence once released.  *See, e.g.*, Docket Item 41 at 9 (IJ Montante was "forced to speculate as to how the Respondent would conduct himself if released into the community"); Docket Item 43-2 at 26-27 (counsel for the government arguing that "we don't know how he will act when he is released").  And there always is some risk that a detained or incarcerated person who is released will engage in conduct demonstrating that his release was a mistake.  But that risk alone cannot justify keeping someone detained forever; otherwise, no one who could be detained would ever be released.

Releasing Hechavarria—even on stringent monitoring conditions—is a risk.  But the government has not demonstrated to anyone that it is highly probable that no condition or combination of conditions of release would suffice to serve its interest in minimizing danger to the community.  Therefore, the due process to which Hechavarria is entitled necessitates taking the risk associated with his release after five-and-one-half years of immigration detention; long after he completed serving his criminal sentence for his prior acts of violence; and years after successful rehabilitative efforts and

assessments placed his risk of violence at the low end.[11]  This Court therefore orders

his release on conditions that will reduce—not eliminate—the risk his release poses.

## CONCLUSION

For the reasons stated above, Hechavarria's motion to enforce this Court's order

dated November 2, 2018, is GRANTED.  The respondents shall release Hechavarria

from custody as soon as practicable, but no later than fourteen days from the date of

this order,[12] under reasonable and appropriate conditions of supervision,[13] all at the

---

[11] The record includes the New York State Department of Corrections and Community Supervision's parole risk assessment for Mr. Hechavarria, dated February 15, 2013.  Docket Item 43-2 at 105-08.  In the professional judgment of the New York State Department of Corrections and Community Supervision, an agency of a sovereign government with as much concern for public safety as the respondents, Hechavarria's "risk of felony violence" is "low," his "arrest risk" is "low" and his "abscond risk" is "low." *Id.* at 105.  The only "criminogenic need" that New York ranks Hechavarria as being above "low" is his likelihood of substance abuse after reentry—which is "probable," but which can be monitored and discouraged or prevented through such conditions as random drug testing.

[12] The Court provides some time for the respondents to ensure Hechavarria's orderly reentry into society, including ensuring that he has a place to live and the ability to obtain financial support.

[13] The parties have suggested such conditions as monitoring through the use of "an appropriate GPS tracking device," Docket Item 52 at 2; in-person reporting, Docket Items 51 at 2 and 52 at 2; and substance abuse related conditions, Docket Items 51 at 3 n.4 and 52 at 2.  Because DHS will monitor these conditions, this Court thinks it best to allow DHS to impose those that it determines are necessary.  *See Hassoun v. Sessions*, 2019 WL 78984, at *7-*8 (W.D.N.Y. Jan. 2, 2019); *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1038 (N.D. Cal. 2018); *Enoh v. Sessions*, 2017 WL 2080278, at *11 (W.D.N.Y. May 15, 2017); *Judulang v. Chertoff*, 562 F. Supp.2d 1119, 1127 (S.D. Cal. 2008).  The government notes that Hechavarria's health conditions may impede the use of an ankle monitor and suggests that "an appropriate evaluation would have to be made regarding the feasibility of or alternatives to using such a device."  Docket Item 52 at 2.  Nothing in this order should be interpreted to suggest a condition that interferes with Hechavarria's medical care.

government's expense.[14]  The respondents shall file a report demonstrating compliance within thirty days of the date of this order.

SO ORDERED.

Dated:      January 16, 2019
            Buffalo, New York


                                    _s/ Lawrence J. Vilardo_____
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE

---

[14] The parties disagree as to who should bear the cost of possible drug testing and other conditions of supervised release, Docket Items 51 and 52, but the ability to pay should not be used as an excuse to deprive Hechavarria of his fundamental right to liberty.  *Cf. Bearden v. Georgia*, 461 U.S. 660, 674 (1983); *Griffin v. Illinois*, 351 U.S. 12, 17-19 (1956).